**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THERESA L. LAMUNYON,**

    **Plaintiff,**

v.                                                                              **Case No. 8:06-cv-1697-T-TBM**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
                                                  /

**O R D E R**

The Plaintiff seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.

I.

Plaintiff was forty-nine years of age at the time of her administrative hearing in March 2006. Plaintiff has an associates degree in nursing. Her past relevant work was as a certified nursing assistant, medical assistant and phlebotomist. Plaintiff applied for disability benefits and Supplemental Security Income payments in March 2004, alleging disability as of

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit.

February 26, 2004, by reason of back pain and leg numbness. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

In essence, Plaintiff testified she is unable to work due to severe pain in her lower back and left legs. She left her last job because she could no longer do the walking and lifting of patients needed to perform the job. As she described her pain, it starts in her lower back and goes across her left buttock, down her left leg, and into her big toe. She indicated she is unable to wear a sock or closed-toe shoe on her left foot due to pain and sensitivity. Plaintiff stated her pain is constant. She rated the "typical" pain in her back at a level eight and the pain in her left leg and foot at a level five or six on a scale of one to ten, with ten being the highest level of pain. Plaintiff also has terrible muscle spasms that interfere with her sleep at night. She has had three back surgeries, with the last one being in 2003. Plaintiff testified that she has not seen a doctor in about a year because she does not have health insurance. She takes ibuprofen and Soma for the pain and uses a heating pad and takes hot baths. According to Plaintiff, she must lie down two to three times a day for about forty-five minutes to an hour and a half each time to relieve the pain. She has received treatment for depression. She uses a cane to assist with her balance. About one month prior to the hearing, Plaintiff lost her balance and fell. She was treated in the emergency room and sent home.

Plaintiff stated that her pain hinders her ability to participate in normal daily activities including spending time with her grandchildren, exercising, and performing

household chores. She still attends church and reads, but she watches little television. Her daughter assists her with grocery shopping, laundry, house cleaning, and some matters of personal hygiene. She can drive but it is painful to be in a car for too long. Plaintiff stated she could walk about fifty yards but then has to rest. She can stand for ten to fifteen minutes and then her leg gets painful. When asked how much she could lift, she indicated she could not lift her granddaughter but could lift a frying pan. She is able to reach above her head and bend some at the waist but cannot bend and get on her knees without spasms in her left leg. She does not stoop down to pick up things. See Plaintiff's testimony (R. 539-553).

Gary Young, a vocational expert ("VE"), testified on an assumption of an individual of Plaintiff's age, education and work experience, capable of light exertional work, with occasional limitations for postural activities; no significant mental, manipulative, visual or communicative limitations; and an inability to work around hazardous machinery and unprotected heights limitations. On this assumption, the VE opined that Plaintiff could perform her past work as a medical assistant as such work is performed in the national economy and her past work as a phlebotomist. Additionally, the VE identified jobs in the sedentary and light exertional categories that could be performed, such as a cashier, office clerk, and assembler. On questioning by Plaintiff's counsel, the VE testified that no work would be available if such person would need to lie down two to three times a day. See VE's testimony (R. 553-558).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

3

By his decision of March 28, 2006, the ALJ determined that while Plaintiff has severe impairments related to lumbar degenerative disc disease and was status-post multiple surgeries, she nonetheless had the residual functional capacity to perform a restricted range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform her past work as well as other jobs existing in the economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner erred in failing to fully and adequately develop the record;

(2) The Commissioner erred through the failure to fully and adequately develop the testimony of the vocational expert; and

(3) The Commissioner erred inasmuch as there was a failure to fully and adequately explain the weight given to the various medical testimony.

By her first claim, Plaintiff argues that the ALJ failed to develop the record regarding her mental impairment by not ordering a consultative psychological examination. Relying primarily on Ford v. Sec. of Health & Human Servs., 659 F.2d 66 (5th Cir. Unit B 1981), McCall v. Bowen, 846 F.2d 1317 (11th Cir.1988), and 42 U.S.C. § 421(h), Plaintiff asserts that the ALJ had a statutory duty to obtain a psychological evaluation in light of her claim that she suffered depression and record evidence revealing that she was prescribed medication for anxiety. Absent such an evaluation, Plaintiff maintains that the ALJ's decision is unsupported by substantial evidence. Plaintiff also argues that the ALJ failed to develop a full and fair record by not obtaining updated medical evidence concerning her physical condition. Because the most recent medical records predated the administrative hearing by ten months and her testimony that such was based on a lack of financial resources, Plaintiff urges that the ALJ was duty bound to obtain updated records in order to make an informed decision. Plaintiff also urges that the ALJ was required to obtain a consultative examination

before discounting her subjective allegations based on a lack of objective evidence and determining her residual functional capacity.

The Commissioner counters that it is Plaintiff's burden to prove disability and she was responsible for producing evidence in support of her claim. The Commissioner acknowledges the ALJ's duty to develop a full and fair record but argues that an ALJ is not required to develop evidence to prove a claimant's claim or obligated to develop the medical record subsequent to the date of the claimant's application. Additionally, the Commissioner urges that Plaintiff fails to demonstrate that consultative examinations were necessary for the ALJ to make an informed decision or that the failure to obtain such results in clear prejudice.

It is well-settled that the ALJ has a basic duty to develop a full and fair record.[2] Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). This obligation exists whether or not the claimant is represented by counsel. Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). In light of this obligation, an ALJ must order a consultative examination when "such an evaluation is necessary for him to make an informed decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988) (quoting Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)); see also Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999). However, case law in this circuit requires the Plaintiff to show some prejudice before a remand to the Commissioner for further development is ordered. See Graham, 129 F.3d at 1423. In considering whether a remand is

---

[2]Nonetheless, it is the claimant's burden of proving that she is disabled and she is responsible for producing evidence in support of her claim. See Ellison, 355 F.3d at 1276.

required, the court should guided by whether there are evidentiary gaps in the record that result in unfairness or clear prejudice. Id.

Upon careful consideration, I am unable to find that the ALJ erred in either regard alleged by Plaintiff. As the Commissioner notes, the ALJ was not required to order an orthopedic and/or physical consultative examination simply because there were no medical records in the ten months preceding the administrative hearing. See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1512(d), 416.912(d). Although Plaintiff may have lacked updated treatment records because she did not have health insurance, that does not alter the ALJ's obligations. To this end, it is worth noting that neither Plaintiff nor her attorney requested the ALJ to order a consultative evaluation. As for Plaintiff's claimed depression, the parties point to three references to depression in the record: Plaintiff alleged that depression affected her ability to work when requesting a hearing before an ALJ (R. 49); Plaintiff mentioned depression once at the administrative hearing (R. 548); and a treating physician assessed anxiety and prescribed Lexapro on one occasion prior to Plaintiff's alleged onset date (R. 308). Plaintiff, however, has not demonstrated that further information was needed for the ALJ to make an informed decision or that clear prejudice results therefrom. Again, neither Plaintiff nor her attorney requested that the ALJ obtain a consultative psychological evaluation, and on the instant appeal Plaintiff does not allege any mental limitations that the ALJ should have considered but did not. While there arguably may be some merit to Plaintiff's complaint that the ALJ improperly discounted her subjective allegations on the basis of a lack of objective evidence, the complaint falls short given that Plaintiff does not specifically challenge the ALJ's credibility determination on appeal.

As for Plaintiff's citation to 42 U.S.C. § 421(h), Plaintiff is correct that the statute provides that in any case where there is evidence indicating the existence of a mental impairment, the Commissioner shall not determine the individual is not disabled without first making every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment. 42 U.S.C. § 421(h). Plaintiff fails to address, however, that the statute applies to initial and reconsideration determinations made by the state agencies and not decisions rendered after a hearing.[3] See id. (specifically excluding (d) which pertains to hearings and judicial review); see also 69 Fed. Reg. 22578-03, 2004 WL 875081, *3 n.2 (noting this interpretation is supported by the Act). Thus, the cited statutory provision is not dispositive on the issue presented here. See Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999) (providing that § 421(h) consultation requirement applies only to cases falling under § 421(a), (c), (g) and (I) at the initial and reconsideration levels). Although Plaintiff also relies on McCall for the same proposition, the Eleventh Circuit was not squarely presented with the issue in that case. Rather, the Court noted that the claimant's testimony of mental problems along with the suggestion made by her treating physicians "might well be enough to require the appointment of a psychiatrist or psychologist under the requirement of section 421(h)." McCall, 846 F.2d at 1320. Since the case was being remanded on another ground, the Court directed only that the applicability of § 421(h) be considered as well. See id. As such, I do not find that McCall is controlling under the circumstances here.

---

[3]Notably, in this case Plaintiff did not allege depression prior to the initial or reconsidered decisions by the SSA.

Plaintiff's reliance on Ford is also unavailing. In that case, the claimant testified to mental difficulties, she was prescribed medication for nervousness, and a report from a mental health clinic indicated she was emotionally unstable and unable to work. Ford, 659 F.2d at 69. The ALJ did not make an express finding regarding the claimant's mental impairment or explain his reasons for denying the claimant's request for a consultative examination, and the district court upheld the ALJ's decision. Id. The former Fifth Circuit reversed and remanded the case, holding that the ALJ failed to develop a full and fair record with regard to the claimant's mental impairment by not ordering a consultative psychiatric evaluation. Id. The facts at hand are distinguishable. Here, neither Plaintiff nor her attorney requested a consultative psychological evaluation and Plaintiff does not allege an mental limitations affecting her ability to work.

By her second claim, Plaintiff argues that the ALJ erred by failing to comply with Social Security Ruling ("SSR") 00-4p by not asking the VE whether his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Although the ALJ indicated in the decision that there was no conflict between the testimony of the VE and the DOT, Plaintiff contends the ALJ was required to affirmatively inquire of this with the VE on the record and remand is necessary for further explanation by the VE.

The Commissioner counters that the ALJ's failure to directly inquire about inconsistencies between the VE's testimony and the DOT is harmless because the VE implied there was no conflict. Additionally, the Commissioner notes that Plaintiff does not point to any actual conflict that prevents her from performing the jobs identified.

Upon review of the hearing transcript and the ALJ's decision, I find that the ALJ did not comply with the directives of SSR 00-4p but his failure to do so was harmless.[4] Here, a review of the transcript reveals that neither the ALJ nor Plaintiff's counsel made any inquiry of the VE concerning any inconsistency between the VE's testimony and the DOT. Under SSR 00-4p, an ALJ is required to identify and obtain a reasonable explanation for any conflicts between a VE's testimony and information in the DOT before relying on the VE testimony to support a decision. Further, it directs that the ALJ explain how any identified conflicts were resolved. SSR 00-4p, 2000 WL 628049 (S.S.A.). However, in this circuit an ALJ is also free to rely upon the VE's testimony, even if it is inconsistent with the DOT, and, contrary to SSR 00-4p, the testimony of a VE trumps the DOT. See Miller v. Comm'r of Soc. Sec., No. 07-11364, 2007 WL 2461771, *1-2 (11th Cir. 2007) (unpublished);[5] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The rationale for this approach is derived from a reading of both the DOT and the regulations that advise that the DOT is not the exclusive source of information concerning jobs. By my consideration, while the ALJ was obliged to make this inquiry under the applicable ruling, the failure to do so does not necessarily require a remand and I am unpersuaded by Plaintiff's argument that remand would serve a useful purpose. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988); Fed. R. Civ. P. 61. I am unwilling to assume and otherwise

---

[4]Social Security Rulings are entitled to deference by the court. See Fair v. Shalala, 37 F.3d 1466, 1469 (11th Cir. 1994).

[5]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

11

conclude on this record that the VE did not fully comprehend the Plaintiff's limitations or fairly consider them in light of the job requirements for the jobs she identified as available to the Plaintiff. Plaintiff provides no demonstration to the contrary and I conclude she is not entitled to relief on this claim.

By her last claim, Plaintiff argues that the ALJ erred by not addressing or stating the weight accorded a state agency doctor's opinion that she was limited to sedentary work. Plaintiff suggests that had this doctor's opinion been credited, she would not have been able to return to past work. Thus, she urges a remand is necessary for further development on this issue.

The Commissioner counters that the ALJ indicated he had considered the state agency findings and explained why he gave great weight to the opinion of another state agency doctor. In any event, the Commissioner contends that the ALJ's failure to discuss the state agency doctor's opinion was harmless because his reasons for accepting the opinion of the other state agency doctor impliedly suffices and the ALJ identified sedentary jobs Plaintiff could perform. Thus, the Commissioner maintains that the ALJ weighed the record as a whole and properly considered all opinions even though he did not make specific reference to the opinion at issue.

Upon careful consideration, I find that while the ALJ did not explicitly address the opinion of the state agency doctor who reviewed Plaintiff's records prior to the SSA's initial

12

determination,[6] a fair reading of the ALJ's decision reveals that he did not credit that opinion because he found that the bulk of the medical evidence was more consistent with the opinion rendered by the state agency doctor who reviewed Plaintiff's prior to the SSA's reconsidered determination. See (R. 16).  Importantly, Plaintiff does not urge on appeal that the medical evidence supports the limitations identified by the state agency doctor on initial determination or point to specific evidence demonstrating such.  While I agree that it would have been more prudent for the ALJ to explicitly address the opinion and state with particularity the weight given the opinion, I am unable to conclude on this record that the ALJ erred in this regard.  In any event, even if the ALJ had erred by failing to address that opinion, the error is harmless in light of the VE's testimony identifying sedentary exertional jobs which Plaintiff could perform (R. 557).  See Diorio, 721 F.2d at 728; Mays, 837 F.2d at 1364; Fed. R. Civ. P. 61.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is

---

[6]State agency doctors reviewed Plaintiff's medical records prior to the SSA's initial determination and prior to its determination on reconsideration. See (R. 383-90, 435-42). Plaintiff complains that the ALJ did not address the opinion dated May 14, 2004, prior to the initial determination.  The primary difference between this opinion and the state agency doctor's opinion on July 28, 2004, immediately prior to the reconsidered determination is that the first doctor opined Plaintiff could stand and/or walk for only two hours out of an eight-hour day whereas the second doctor opined Plaintiff could stand and/or walk for up to six hours of an eight-hour day.  As Plaintiff suggests, the difference essentially is one of being able to perform sedentary exertional work or light exertional work.

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 1st day of November 2007.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record